**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                                        )
CHRISTINE MARA ALEXANDER,               )
                                        )
          Plaintiff,                    )
                                        )          Civil Action
v.                                      )          No. 20-10020-PBS
                                        )
MASSACHUSETTS DEPARTMENT OF             )
CORRECTION, CAROL MICI, in her          )
official capacity, NELSON ALVES         )
in his official capacity, and           )
WELLPATH, LLC,                          )
                                        )
          Defendants.                   )
_____)
```

**MEMORANDUM AND ORDER**

May 4, 2022

Saris, D.J.

**INTRODUCTION**

In her initial pro se complaint, Christine Mara Alexander, who suffers from claustrophobia and gender dysphoria, challenged the denial of an orchiectomy and her limited access to female clothing and makeup products. After the Court appointed counsel, defendants agreed to the orchiectomy. In her Amended Complaint, she alleges that the denial of gender-affirming items, as well as defendants' failure to transport her alone in a large van to her medical appointments, are a violation of her rights under the Eighth Amendment, Fourteenth Amendment, and Americans with

Disabilities Act. She seeks an injunction and declaratory relief but not compensatory damages.

The defendants are the Massachusetts Department of Correction ("DOC"); Carol Mici, the Commissioner of the Massachusetts DOC; Nelson Alves, the Superintendent of MCI-Norfolk (collectively, "DOC Defendants"); and Wellpath, LLC ("Wellpath"). Alves and Mici are being sued in their official capacities. Wellpath employs the medical providers for DOC inmates and is responsible for Alexander's treatment for gender dysphoria. The defendants have moved to dismiss all claims.

After hearing, the Court **ALLOWS IN PART** the defendants' motion as to the Eighth Amendment claim, **ALLOWS** the motion as to the Fourteenth Amendment Due Process claim, and **DENIES** the defendants' motion as to the Equal Protection and Americans with Disabilities Act claims.

**BACKGROUND**

I.   **The Plaintiff**

Plaintiff Christine Mara Alexander is serving a life sentence at Massachusetts Correctional Institution at Norfolk ("MCI-Norfolk"). Alexander has male genitalia but lives as a woman. An evaluating psychologist and physician concluded that she "appears to fit the diagnosis" of gender dysphoria ("GD"). Dkt. 47 ¶ 14. Alexander has sought medical treatment and

counseling for gender dysphoria since 1985. The defendants have
known of Alexander's condition since at least 2003, when she was
evaluated by a psychologist and physician at the request of DOC.
Given her diagnosis, the doctors recommended she receive the
clinical treatment outlined by the WPATH Standards of Care. The
Massachusetts DOC has explicitly incorporated the WPATH
Standards of Care in its official policy on the Identification,
Treatment, and Correctional Management of Inmates Diagnosed with
Gender Dysphoria, 103 DOC 652. Regulation 103 DOC 652
establishes a DOC Gender Dysphoria Treatment Committee ("GD
Committee"); the GD Committee consists of contractual medical
providers and is responsible for reviewing treatment for all
inmates diagnosed with gender dysphoria.

## II.  **Previous Lawsuits, Grievances, and Appeals**

Ms. Alexander has been seeking treatment and accommodation
for her gender dysphoria for years. In 2009, Alexander filed a
lawsuit against the DOC and its medical staff for failure to
allow hormone therapy, laser hair removal, and finasteride (hair
loss medication). In 2012, the Court entered an order
documenting the DOC's agreement to provide laser hair removal
and finasteride.

Alexander has continued to struggle with gender dysphoria,
and she has complained that her current treatment plan is

insufficient in sixty-two documented medical treatment notes from mental health visits since 2012. She has expressed suicidal thoughts. In the wake of her 2009 lawsuit, Alexander was placed on Mental Health Watch where she met with a medical professional and revealed that she had attempted suicide twice.

Alexander has filed grievances and appeals of denials relating to her requests for an orchiectomy and gender-affirming items. She provides examples of her denials, such as "Thank you for resubmitting your appeal. It is appreciated. Upon the review of the GD Committee, this procedure was not clinically indicated. You are encouraged to continue communication with your therapist when you are seen." Dkt. 47 ¶ 70. Alexander calls these responses "empty statements" "devoid of any rationale." Dkt. 47 ¶ 71.

### III. <u>Orchiectomy</u>

Around June 2021, Alexander received verbal notice that the GD Committee had approved her request for an orchiectomy.[1] Because Alexander also suffers from claustrophobia, she requested transportation in a large van by herself to medical appointments. She was scheduled for a surgical consult on July 19, 2021, but when Alexander was brought out for her transport,

---

[1] An orchiectomy is a surgical procedure in which an individual's testicles are removed.

she learned that she would be riding with other inmates in a
smaller van. Alexander had a claustrophobic attack when she
attempted to get in and was not able to attend her appointment.

Alexander's doctor submitted a note on July 28, 2021,
reflecting that he intended to place a medical restriction that
Alexander should be transported in a van and he informed
Alexander that he would put another order in for a ride-alone
restriction. Another appointment was scheduled for August 12,
2021, to meet with a urologist. When it was time for her August
appointment, DOC planned to transport her with other prisoners.
Alexander was told the van was one of the newer ones, which she
understood to be smaller than the larger, older van she had
requested. Alexander refused to attend the appointment.

## IV.   **Gender-Affirming Items**

In addition to her requests for an orchiectomy, Alexander
has repeatedly requested permission to buy, at her own expense,
gender-affirming items like a nude bra, high cut women's
underwear, Levi's jeans, "Kiss Press Nails" in dark purple and a
red or dark red, mascara, and Wet & Wild "Light berry
beige/frost" lipstick. She also requests an eyebrow pencil, a
light to medium foundation, "Oil of Olay" cream, eye shadow in
"pale purple" or "lilac," and women's size 11/11.5 sneakers.
Alexander has been allowed "[a]t times" to order outside items,

like women's cut jeans, through online stores or catalogues. Dkt. 47 ¶ 55. She has also "[a]t times" been allowed access to items available to women at the all-women's prison, MCI-Framingham. Dkt. 47 ¶ 56. Alexander alleges that the policy around commissary items is an "ever-changing system of inconsistently applied rules" and "definitions of contraband," and access to outside items and canteen items from MCI-Framingham "has varied" based on "arbitrary and capricious circumstances, including who holds the position of prison treasurer at the time." Dkt. 47 ¶¶ 55-56, 60.

Alexander was evaluated by an expert doctor in her prior case who recommended that the DOC "allow dress, undergarment, etc. that [would] allow Ms. Alexander to represent herself in a way that is consistent with her self-identified gender . . . ." Dkt. 47 ¶ 50.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Two basic principles guide the Court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

**DISCUSSION**

## I.   Eighth Amendment Claim

### A.   Legal Standard

To state a claim for constitutionally inadequate medical care under the Eighth Amendment, an inmate must show that state corrections officials acted with "deliberate indifference to [her] serious medical needs." Zingg v. Groblewski, 907 F.3d 630, 635 (1st Cir. 2018) (quoting Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161-62 (1st Cir. 2006)). "There are both objective and subjective components to" this analysis. Id.

The objective component "requires proof of a serious medical need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014). A medical need is considered serious if it is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.

1990)). The Eighth Amendment "proscribes only medical care so unconscionable as to fall below society's minimum standards of decency." Kosilek, 774 F.3d at 96. See also Snell v. Neville, 998 F.3d 474, 495 (1st Cir. 2021) ("As for whether the defendants provided adequate care, prison officials are not required to render ideal care, let alone cater to an inmate's preferred healthcare regimen.").

The subjective component "mandates a showing of prison administrators' deliberate indifference" to the prisoner's medical need. Kosilek, 774 F.3d at 82. Satisfying the subjective prong "requires evidence that the failure in treatment was purposeful." Id. at 83. "[T]he plaintiff must show that the prison official was aware that a substantial risk of serious harm existed and that the official nevertheless disregarded that substantial risk of harm." Wittkowski v. Levine, 382 F. Supp. 3d 107, 113 (D. Mass. 2019) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The subjectivity prong also acknowledges the realities of security in prison administration, and deference should be provided on issues of institutional order and security. See Kosilek, 774 F.3d at 92.

B.  **Analysis**

1.  *Orchiectomy*

a. *Serious Medical Need*

Alexander bases her Eighth Amendment claim on her gender dysphoria. A court-selected endocrinologist in conjunction with her 2009 suit "recommended that it would be prudent to consider an orchiectomy to improve Ms. Alexander's well-being." Dkt. 47 ¶¶ 45-46. The medically-recommended treatment plan, combined with Alexander's alleged history of self-harm towards her male anatomy, would satisfy the objective prong of a serious medical need. The GD Committee apparently agreed, approving Alexander for a surgical consultation for an orchiectomy in June 2021.

Alexander contends that her claustrophobia has prevented her from attending her appointments and that her claustrophobia should be recognized as a serious medical need, as it has been recognized by a doctor in a medical order to the DOC: "Patient has claustrophobia and requests van instead of car." Dkt. 47 ¶ 81. Here, Alexander has alleged that she had claustrophobic attacks when the DOC attempted to transport her with other prisoners in an SUV and compact van, respectively. She also alleges that a doctor signed off on her need for a ride-alone restriction and for transport in a van on July 28, 2021, but DOC did not follow that recommendation. Alexander has plausibly alleged claustrophobia satisfies the objective standard.

   *b. Deliberate Indifference*

Deliberate indifference "requires evidence that the failure in treatment was purposeful." Kosilek, 774 F.3d at 83. Alexander alleges that the DOC continued to try to transport her in a compact van and with other prisoners after she experienced claustrophobic attacks during previous attempts. The DOC Defendants contend that they have "made reasonable efforts to transport Plaintiff, pursuant to a medical order, to outside medical appointments via a fleet of authorized transportation vehicles utilized by the DOC." Dkt. 64 at 12.

The question is whether the allegation that the DOC's attempts to transport Alexander to her medical appointments in a "compact" van with other prisoners states a plausible claim of deliberate indifference. See Kosilek, 774 F.3d at 92 (quoting Battista v. Clarke, 645 F.3d 449, 454 (1st Cir. 2011)) ("As long as prison administrators make judgments balancing security and health concerns that are 'within the realm of reason and made in good faith,' their decisions do not amount to a violation of the Eighth Amendment.").

While Alexander has adequately alleged at this stage that the DOC was aware of her previous claustrophobic attacks, she does not state a plausible Eighth Amendment claim because DOC chose to continue to transport her in "compact vans" instead of

the requested larger vans. The doctor's note in August only refers to a "van"; it did not refer to size.

The case has morphed since the filing of the Amended Complaint. At the hearing, the DOC explained that it offered to transport Alexander alone in the compact van. Alexander did not contest this point. However, Alexander submitted a medical order dated 9/17/21 stating "travel by van, no car, SUV or compact van"). Dkt. 70-1. The DOC has responded that it does not plan to comply with the request for a larger van. The Court allows the DOC Defendants' motion to dismiss as to Alexander's Eighth Amendment claim. Even with the new allegations, a constitutional claim based on the DOC's failure to transport her in a larger van rather than a compact van is not plausible because there is no allegation that an official was deliberately indifferent to a substantial risk of harm based on the size of the van.

### 2. Gender-Affirming Items

Alexander further alleges that the denial of gender-affirming items constitutes deliberate indifference to a serious medical need because "[g]ender-affirming commissary items are part of what a prison's treatment plan for a disabled inmate must provide or allow to be purchased." Dkt. 47 ¶ 98. Alexander avers that access to items at MCI-Framingham and purchasing outside items has varied over time. Moreover, her "need for

[11]

gender affirming items necessarily requires her to look outside
of the canteen list at the women's prison, MCI-Framingham, and
the DOC Unisex Order Form, because there are virtually no
cosmetic items made available to women or transgender women, nor
are these basic clothing items available to any inmates." Dkt.
70 at 9-10.

The DOC Defendants respond that "Plaintiff is afforded the
opportunity to order from the canteen at both her current
institution and MCI-Framingham." Dkt. 64 at 14.

Massachusetts requires that prisoners with gender dysphoria
"shall be . . . provided with access to commissary items,
clothing, programming, educational materials and personal
property that is consistent with the prisoner's gender
identity." G.L. c 127, § 32A. The Department of Correction
Public Policy on Treatment Planning for Inmates with Gender
Dysphoria states:

> Commensurate with the security level of the housing
> placement, Gender Dysphoria inmates housed in a male
> institution (Male to Female, or MTF) shall be permitted
> to purchase and retain clothing items and articles
> authorized for other male inmates housed in that
> institution, as well as those items authorized for
> females commensurate with their particular security
> level at the female institution.

103 DOC 652.06(C)(2)(b).

In similar situations, courts have held that denying transgender inmates' makeup and similar gender-affirming items does not violate the Eighth Amendment. See Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1274 (11th Cir. 2020) (holding after review of evidence presented at a bench trial that the denial of social transitioning items did not amount to deliberate indifference where medical professionals were divided over the necessity of these items to gender dysphoria treatment); Campbell v. Kallas, 936 F.3d 536, 549 (7th Cir. 2019) ("As for Campbell's requests for electrolysis and makeup, our cases offer no indication that denying arguably nonmedical cosmetic accommodations [to transgender inmates] violates the Eighth Amendment.")).

To the extent Alexander seeks access to make-up that she prefers (e.g., "Kiss Press Nails" in dark purple and red or dark red), she has not plausibly shown that denials of these specific outside orders amount to a constitutional violation. More fundamentally, however, she alleges that she was denied clothing that meets her body's needs (like female undergarments). The claim is not dismissed only to the extent that the allegation is that the state was deliberately indifferent to her need for undergarments and other clothing that fits her body type.

   *3. Wellpath's Liability*

Wellpath contends that Alexander's deliberate indifference claims against it are without merit because Alexander has not established that Wellpath directly caused the alleged violation of constitutional rights through adopting a policy or practice. Alexander responds that Wellpath remains a necessary party to this litigation because Wellpath medical professionals make decisions about her medical care, sit on the GD Committee, and are part of her treatment team.

Several circuits have held that "a private corporation that has contracted to provide essential government services is subject to at least the same rules that apply to public entities." Glisson v. Ind. Dep't of Corr., 849 F.3d 372, 378-79 (7th Cir. 2017) (en banc); Street v. Corr. Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996)); Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408-09 (2d Cir. 1990). "The central question is always whether an official policy . . . caused the constitutional deprivation." Glisson, 849 F.3d at 379.

Alexander alleges in her opposition to the motion that Wellpath has a policy of total deference to the DOC, and in her Amended Complaint she alleges that this policy manifested itself by DOC Defendants and Wellpath advising her on coping mechanisms rather than providing the care she needs. See Dkt. 47 ¶ 99.

Elsewhere in the Amended Complaint, however, Alexander challenges that DOC Defendants ignored the advice of their doctors who provided her a medical slip for "van only" transportation. Alexander has not made a plausible claim that Wellpath was deliberately indifferent to her medical needs with regards to transportation accommodations, but she has plausibly alleged that Wellpath has been deliberately indifferent to her medical needs by failing to accommodate her need for undergarments and clothing that fits her body type through its role on the GD Committee.

## II.  __Fourteenth Amendment Claims__

### A. Equal Protection Claim

#### *1. Legal Standard*

Alexander alleges that she was denied equal protection based on her transgender status because other female inmates are allowed to obtain clothing that fits their bodies. Specifically, Alexander has stated that she needs to be able to order a particular cut of women's underwear that is more comfortable for her body type than the women's underwear that is available to her because she still has a biologically male body type. To state an equal protection claim, a party "must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently,

instances which have the capacity to demonstrate that [plaintiffs] were singled . . . out for unlawful oppression." Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (internal quotation marks omitted). Alexander's allegation of deprivation of appropriate undergarments based on her transgender status states a plausible equal protection claim against both the defendants from the DOC and Wellpath, as Wellpath sat on the GD Committee and is involved in decisions about her gender-affirming medical treatment.[2]

**B. Due Process Claim**

*1. Legal Standard*

A due process claim under the Fourteenth Amendment can only be maintained where the state has interfered with a liberty or property interest. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest is only created if the deprivation occasioned by prison conditions or a prison

---

[2] Alexander also asserts numerous other theories of equal protection claims, including that men may receive an orchiectomy to treat testicular cancer and that biological women are allowed to possess more feminine items at the women's prisons. These theories are without merit.

regulation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

An inmate's right to receive outside items may be limited by prison regulations that are reasonably related to legitimate penological interests. See Thornburgh v. Abbott, 490 U.S. 401, 416 (1989) (holding that prison authorities have broad discretion in regulating the entry of material into a prison). If an inmate does have a property interest and they are deprived of that interest "by random and unauthorized conduct by state officials, the Supreme Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of the postdeprivation remedies provided by the state." Hadfield v. McDonough, 407 F.3d 11, 19 (1st Cir. 2005) (quoting O'Neill v. Baker, 210 F.3d 41, 42 (1st Cir. 2000)). This principle, known as the Parratt-Hudson doctrine, "shields a public entity from a federal due process claim where the denial of process was caused by the random and unauthorized conduct of government officials and where the state has provided adequate postdeprivation remedies to correct the officials' random and unauthorized acts." Hadfield, 407 F.3d at 19-20. The doctrine permits "procedural claims to be resolved in state forums where states .

[17]

. . provide adequate remedies." Id. at 20 (quoting O'Neill, 210
F.3d at 50).

    2. *Analysis*

    Alexander alleges that there is no meaningful system of
ensuring her property rights to gender-affirming items, as the
current method of which items can be purchased is "in constant
flux, determined by non-medical personnel, and is accordingly
arbitrary and capricious." Dkt. 47 ¶ 114. Further, Alexander
alleges that there is no meaningful procedure for her to
challenge the denial of access to gender-affirming items, an
orchiectomy, or to require the DOC Defendants and Wellpath to
comply with the WPATH Standards of Care. See id. ¶ 115. As
support for these due process allegations, Alexander alleges
that DOC workers took gender-affirming items from her, including
a penis gaffe (tuck), women's underwear, mascara, and nail
polish. See id. ¶ 41.

    Alexander has availed herself of the administrative remedy
grievance process and has filed appeals. While she contends that
their dismissals amount to arbitrary and capricious outcomes,
there is a process in place for her to challenge the removal of
items and the decisions of the committee. If an individual guard
has taken her possessions in violation of MCI-Norfolk's
regulations, the proper remedy would be to file a grievance with

the prison or seek relief from a state forum. Alexander has not plausibly alleged that there is no adequate post-deprivation remedy under Massachusetts law. Therefore, the Court dismisses Alexander's due process claim.

### III. **Americans with Disabilities Act/Rehabilitation Act Claim**

**A. Legal Standard**

The Americans with Disabilities Act ("ADA") and the Rehabilitation Act can be analyzed together "through the rubric of the ADA" as they "prohibit the same type of discrimination." Snell, 998 F.3d at 498. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any [public] entity." 42 U.S.C. § 12132. Prisons are "public entities" for purposes of the ADA. See Pa. Dep't. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998). Prisons are required to make "reasonable accommodations" to ensure qualified individuals have access to these benefits, where "a 'reasonable accommodation' is one that gives 'meaningful access' to the program or services sought." Bibbo v. Mass. Dep't of Corr., No. CIV.A. 08-10746-RWZ, 2010 WL 2991668, at *1 (D. Mass. July 26, 2010) (denying motion for summary judgment because there was an issue of material fact

whether a motorized wheelchair was medically necessary) (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985)).

The reasonable accommodation inquiry begins by walking through three prongs: 1) is Alexander a "qualified individual with a disability" 2) who was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against" and 3) was "such exclusion, denial of benefits, or discrimination [] by reason of [her] disability?" Snell, 998 F.3d at 499 (quoting Kiman v. N.H. Dep't. of Corr., 451 F.3d 274, 283 (1st Cir. 2006)).

**B. Analysis**

Alexander has alleged sufficient facts to state a plausible claim that she is a qualified individual under the ADA. Alexander has alleged that gender dysphoria and claustrophobia are both disabilities under the ADA, and the DOC Defendants have not responded to or disputed this point. As to the second prong, Alexander has alleged that she has been denied medical care and medical treatment, including both an orchiectomy and gender-affirming items. See Dkt. 47 ¶ 126. Medical care is one of the "services, programs, or activities" covered under the ADA. Kiman, 451 F.3d at 284. The DOC Defendants challenge that Alexander is being denied access to medical services, as they have recently approved the orchiectomy procedure, agreed to

transport her in a van by herself, and offered her all the commissary items available on the lists of both the men's prison and MCI-Framingham. As for the third prong, Alexander alleges that her requested accommodations are "reasonable on their face and do not impose an undue financial or administrative burden on the DOC Defendants." Dkt 47. ¶ 126.

While the DOC Defendants have made some accommodations for Alexander's claustrophobia disability already, Alexander contends that transportation via a compact van is not a reasonable accommodation for her claustrophobia and that transportation by herself in a larger van is the only reasonable accommodation. While she has not met the higher threshold of showing a plausible deliberate indifference Eighth Amendment claim for her transportation, she has plausibly alleged a claim under the ADA's standard. See Walsh v. Coleman, No. 3:19-CV-980 (JAM), 2021 WL 3036920, at *6 (D. Conn. July 19, 2021) (denying motion for summary judgment because "[a] reasonable factfinder could conclude that the lack of solo transport deterred or discouraged [the inmate with PTSD] from accessing outside medical services"). The motion to dismiss the ADA claim is denied.

## ORDER

The motion to dismiss (Dkt. 63) is allowed in part and

denied in part. The Court **ALLOWS IN PART** the defendants' motion
as to the Eighth Amendment claim, **ALLOWS** the motion as to the
Fourteenth Amendment Due Process claim, and **DENIES** the
defendants' motion as to the Equal Protection and Americans with
Disabilities Act claims.

SO ORDERED.

                              /s/       PATTI B. SARIS
                              PATTI B. SARIS
                              UNITED STATES DISTRICT JUDGE