UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CHRISTINE MARA ALEXANDER,

Plaintiff,

v.

MASSACHUSETTS DEPARTMENT OF CORRECTION, CAROL MICI in her official capacity, NELSON ALVES in his official capacity, and WELLPATH, LLC,

Defendants.

C.A. NO. 1:20-CV-10020-PBS

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Wellpath, LLC, submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment. Defendant submits these facts as undisputed for purposes of the Motion for Summary Judgment only and reserve the right to contest any such fact at the time of trial if the Motion for Summary Judgment is denied.

1. Ms. Christine Alexander has been in prison since 1989. **Exhibit A**, Deposition Transcript of Christine Alexander, pg. 14.
2. Ms. Alexander is serving a natural life sentence for murder in the first degree. **Ex. A**, pg. 17.
3. Ms. Alexander was first diagnosed with gender dysphoria within the prison system between 2002-2003. **Ex. A**, pg. 34.
4. 103 DOC 652 is a policy regarding the Identification, Treatment and Correctional Management of Inmates Diagnosed with Gender Dysphoria. **Ex. A**, Pg. 46 and **Exhibit B**, 103 DOC 652.

5. 103 DOC 652 created the Gender Dysphoria Committee, which consists of the Gender Dysphoria Treatment Committee and the Gender Dysphoria Clinical Supervision Group. **Exhibit C**, Deposition Transcript of Dr. James Thompson, pg. 50, and **Ex. B**.
6. Pursuant to 103 DOC 652, a treatment plan for an inmate with gender dysphoria may contain recommendations regarding access to cross gender clothing and canteen cosmetic items approved for inmates in accordance with 103 CMR 403 inmate property policy. **Ex. A**, pgs. 48-49, Ex. B and **Exhibit D**, 103 CMR 403.
7. What is deemed medically necessary for a transgender individual is determined by the Treatment Committee. **Ex. C**, pg. 50.
8. Wellpath providers through the Gender Dysphoria Committee are able to approve personal items for the treatment of gender dysphoria, such as lipstick, bras etc., however, they do not control, the type, kind, color, etc. of the items. **Ex. C**, pg. 76-77.
9. Treatment for gender dysphoria can be treated with several approaches, which include helping the individual transition to their gender identity. There are physical aspects, such as medical interventions and medications, as well as psychological aspects that assist them to deal with the incongruence concerning their gender. **Ex. C**, pg. 31-32.
10. Ms. Alexander receives one-on-one counseling with a clinician for her gender dysphoria diagnosis. She meets with the clinician once a month, but can put in sick slips if she needs to be seen sooner for any mental health reason. **Ex. A**, pg. 36-38.
11. Ms. Alexander has received a recommendation from the Gender Dysphoria Committee for an orchiectomy. **Ex. A**, pg. 34-35.
12. Ms. Alexander filed a previous lawsuit on or around 2012, and sought an orchiectomy in that lawsuit. The matter settled out of court and an orchiectomy was not included as part of the

settlement. Ms. Alexander did not seek underwear, jeans or make-up in the 2012 lawsuit. **Ex. A**, pg. 133-134.

13. Ms. Alexander has been approved for a gaff, however, she previously made her own. **Ex. A**, pg. 36.
14. An orchiectomy request was new to the Gender Dysphoria Committee as they had encountered requests for vaginoplasties and sex confirmation surgery, but not an orchiectomy. As such, there was discussion concerning it. **Ex. C**, pg. 102.
15. It was understood that Ms. Alexander would have to leave MCI Norfolk and go to MCI Framingham (women's) prison if she underwent sex confirmation surgery, which she did not want to do. Ms. Alexander also understood that an orchiectomy would reduce her testosterone level to zero, which is not medically true. Thus, there was ongoing discussion surrounding the request for an orchiectomy by Ms. Alexander before it was ultimately recommended. **Ex. C**, pg. 103-104.
16. The Gender Dysphoria Committee does not approve the request for a surgical procedure, such as an orchiectomy. Rather they recommend the procedure which allows the inmate to see the surgeon who would evaluate the patient and make their own recommendations. **Ex. C**, pg. 107-108.
17. Ms. Alexander later described dysphoria regarding her testicles, which led to further discussion amongst the Gender Dysphoria Committee in analyzing the orchiectomy request. **Ex. C**, pg. 113-114.
18. The Gender Dysphoria Committee was aware of Ms. Alexander's requests for variations of items on the Framingham canteen list but did not feel they were medically necessary. She was

noted to be doing well and was stable. They may make a recommendation for an item, such as a bra, but not a color of a bra. **Ex. C**, pg. 121 - 122.

19. The Gender Dysphoria Committee has approved makeup, women's jeans, women's underwear and bras for Ms. Alexander, however, not specific types of these items. **Ex. C**, pg. 133-134.

20. Ms. Alexander has certain wants, including wants regarding a certain color of makeup and certain cut of underwear. However, that does not rise to the level of medical necessity. **Ex. C**, pg. 137.

21. "There are lots of things in prison that people do not have access to as part of being in prison…If a medical exception is made to that, it would need to rise to the level of being medically necessary…" **Ex. C**, pg. 142.

22. Ms. Alexander understands that as an inmate with gender dysphoria, she is permitted to purchase and retain items that the "girls can have at their prison." **Ex. A**, pg. 50.

23. The female canteen list is made available to male to female transgender individuals generally. **Ex. C**, pg. 83.

24. Having access to the target gender's canteen list in a transgender individual has a psychological benefit. **Ex. C**, pg. 84-85.

25. Ms. Alexander has been utilizing the Framingham clothing list since approximately 2007. **Ex. A**, pg. 53.

26. At that time she ordered size 6, 7 and 8 Levi's relaxed fit jeans off of the Framingham (women's) clothing list. **Ex. A**, pg. 54.

27. Ms. Alexander ordered three different sizes because she altered the jeans. Once she got the waist size right, she had to "sew the seam in a bit, down the leg, a little down towards the knee." **Ex. A**, pg. 55-56.

28. Prior to altering the jeans, Ms. Alexander testified that the material in the crotch and rear would bunch up. **Ex. A**, pg. 56-57.

29. After altering the jeans, the fit was tighter. Ms. Alexander removed material to make the fit tighter, and when she did so the fit was "perfect." **Ex. A,** pg. 58, 62.

30. Despite the fit being "perfect" after alteration, Ms. Alexander completed a special order form for jeans because she subsequently gained weight and the waist no longer fit. **Ex. A**, pg. 62.

31. In 2020, the Framingham clothing list included Levi's straight blue jeans. **Ex. A**, pg. 66 and **Exhibit E**, 2020 Framingham Clothing List.

32. The DOC sold Levi's 512 jeans between 2016 and 2020 and Ms. Alexander purchased one pair. Subsequently, that cut jean was not available on the Framingham clothing list. **Ex. A**, pg. 67.

33. Ms. Alexander has ordered off of the Framingham commissary list. The commissary list has food items and cosmetics. **Ex. A**, pg. 75, and **Exhibit F,** Framingham Commissary List.

34. She has ordered eyeliner, hairspray, brush and lipstick off the commissary list. **Ex. A**, pg. 75-76.

35. The list has "thinned out" from what it used to be. Lipstick remains on the list. **Ex. A**, pg. 76-77, and Ex. E.

36. Ms. Alexander has ordered and received size 42C bras off of the Framingham Clothing Request Form. **Ex. A**, pg. 83 and **Exhibit G**, Framingham Clothing Request Form.

37. Ms. Alexander currently owns jeans, t-shirts, sweatpants, sweaters, polo shirts, dress shirts, sneakers, bras, shoes, lipsticks, eyeliners, hairbrushes, hairspray, emery boards, socks, underwear, coats, jackets, hats, shorts. **Ex. A**, pg. 83-84.

38. Ms. Alexander has ordered women's underwear from the state clothing form. Other women have given her underwear as well, which she has transformed into gaffs. **Ex. A**, pg. 85.
39. Ms. Alexander did not want a gaff previously as she was concerned if would get sweaty and smell. She was glad that she was not allowed to have one previously. **Ex. A**, pg. 86.
40. Ms. Alexander currently wears her homemade gaffs and they hide everything perfectly. **Ex. A**, pg. 88.
41. Other women would provide Ms. Alexander with underwear that did not fit. If the underwear was too small for Ms. Alexander she would take the elastic out and that made the "perfect underwear." If the underwear were too large she would transform them into gaffs. **Ex. A**, pg. 89.
42. The bras that are on the MCI Framingham state order form are white. **Ex. A**, pg. 94.
43. Ms. Alexander currently has access to makeup on the Framingham commissary list. **Ex. A**, pg. 137.
44. Ms. Alexander currently has access to order bras on the commissary list. **Ex. A**, pg. 137.
45. Ms. Alexander has never ordered a nude bra while in prison. **Ex. A**, pg. 137.
46. Ms. Alexander has access to women's underwear. **Ex. A**, pg. 137.
47. The jeans in Ms. Alexander's possession at the moment are adequate. **Ex. A**, pg. 153-154.
48. Ms. Alexander has also been diagnosed with claustrophobia. **Ex. A**, pg. 37.
49. Ms. Alexander is prescribed Ativan for her claustrophobia. **Ex. A**, pg. 43.
50. Ms. Alexander currently works in the mainline kitchen. **Ex. A,** pg. 23.
51. The mainline kitchen at MCI Norfolk is in the basement and is a tunnel system. The tunnels are underground with no windows, and Ms. Alexander travels throughout the tunnels to perform her job in the mainline kitchen. **Ex. A**, pg. 24-27.

52. Ms. Alexander was last transported out of the prison in 2013 via a four door sedan. **Ex. A**, pg. 96-97.

53. Two officers were in the front seat of the sedan and there was a plexiglass partition between the front and back seat. **Ex. A**, pg. 98.

54. Ms. Alexander has had a ride alone medical restriction in place since at least 2013. **Ex. A**, pg. 99.

55. Ms. Alexander has attempted transport in a SUV or CTU van in order to get to her appointments but has either refused the transport or had a medical issue that ended the transport. **Ex. A**, pg. 103-109, and **Exhibit H**, MCI Norfolk Incident Reports.

56. Dr. Herbert Berger-Hershkowitz authored a medical restriction form requesting a wheelchair van for transport for Ms. Alexander with an effective date of June 23, 2022 – June 23, 2023. **Ex. A**, pg.118-119 and **Exhibit I**, Medical Restriction Form for Wheelchair Van.

57. Dr. Berger-Hershkowitz testified that Ms. Alexander felt the wheelchair van would be large enough to accommodate her transportation needs given her claustrophobia and he believed such request was reasonable. **Exhibit J**, Deposition Transcript of Dr. Berger-Hershkowitz, pg. 76.

58. Prior medical restrictions were put in place by Wellpath employees for Ms. Alexander to transport, including through a large van without PC section and old Econoline van. **Ex. A**, pg. 116-118 and **Exhibit K**, Medical Restriction Forms.

59. Ms. Alexander had never been in a wheelchair van, but based on descriptions from others she thought she would be able to be transported successfully in it. **Ex. A**, pg. 125-127.

60. When asked how Wellpath providers have failed to accommodate Ms. Alexander's claustrophobia, Ms. Alexander stated she did not know. **Ex. A**, pg. 146.

61. When asked if Ms. Alexander believes there is anything beyond the medical restrictions in place for claustrophobia they could do for her, she responded no. **Ex. A**, pg. 147.

62. When asked how the Wellpath providers have been deliberately indifferent to Ms. Alexander's medical needs, she stated "Everything I asked for got denied." This included the orchiectomy, makeup and clothing items. This included items that "used to be on the canteen list that they took off." **Ex. A**, pg. 148-149.

63. Ms. Alexander admitted she has received some treatment for her gender dysphoria. **Ex. A**, pg. 151-152.

64. Since the orchiectomy has been recommended, Ms. Alexander does not believe Wellpath has been an obstacle in her undergoing the orchiectomy procedure. **Ex. A**, pg. 152-153.

65. Ms. Alexander has successfully completed an outside medical trip on February 3, 2023 via the wheelchair van.

66. Ms. Alexander told her therapist from Wellpath that her mental health team bends over backwards for her. **Ex. A**, pg. 155-156, and **Exhibit L**, Medical Record.

Respectfully Submitted
WELLPATH, LLC,

By Its Attorneys,

*/s/ Lori K. Vaulding*

James A. Bello, BBO #633550
jbello@morrisonmahoney.com
Lori K. Vaulding, BBO #678404
lvaulding@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by email on the 1st day of March, 2023.

*/s/ Lori K. Vaulding*

________________________________
Lori K. Vaulding