```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                   )
CHRISTINE MARA ALEXANDER,          )
                                   )
                    Plaintiff,     )
v.                                 )
                                   )
MASSACHUSETTS DEPARTMENT OF        )   Civil Action
CORRECTION, CAROL MICI, in her     )   No. 20-10020-PBS
official capacity, NELSON ALVES    )
in his official capacity, and      )
WELLPATH, LLC,                     )
                                   )
                    Defendants.    )
_____)
```

### MEMORANDUM AND ORDER

May 7, 2024

Saris, D.J.

### INTRODUCTION

Christine Mara Alexander filed suit against the Massachusetts Department of Correction, Carol Mici, and Nelson Alves (collectively, "DOC Defendants"), and Wellpath, LLC, a medical service provider ("Wellpath"), alleging that Defendants had been deliberately indifferent to her serious medical needs and had refused to provide reasonable accommodations for her disabilities. Alexander is a transgender woman diagnosed with gender dysphoria and claustrophobia who has been serving a life sentence since 1989. After the Court appointed pro bono counsel for Alexander, the DOC approved her request for an orchiectomy procedure. The Court then

1

partially granted Alexander's motion for summary judgment, ordering the DOC provide her with (1) transportation in a wheelchair van to medical appointments and (2) properly fitting clothing.

Pursuant to 42 U.S.C. § 12205, Alexander now seeks reimbursement of $329,356.50 in attorney's fees. Although the DOC Defendants concede Alexander's entitlement to attorney's fees as the prevailing party, they challenge the total amount sought as excessive. After reviewing the briefs and attorney billing records submitted by the parties, the Court **ALLOWS IN PART** and **DENIES IN PART** Alexander's Motion for Attorney's Fees and Bill of Costs (Dkt. 116).

## BACKGROUND

The facts of this case are outlined in the Court's prior opinions allowing in part and denying in part the Defendants' motion to dismiss (Dkt. 75) and the parties' cross-motions for summary judgment (Dkt. 113). Below is an overview of the procedural history of the case that is relevant to the instant motion for attorney's fees and costs.

In January 2020, Alexander filed a pro se complaint against the Massachusetts Department of Correction, requesting "an orchiectomy, clothing that fits, and access to certain make-up products." Dkt. 1 at 4. The Court dismissed her initial complaint without prejudice to refiling and appointed Sara J. Shanahan of

Sherin and Lodgen LLP ("Sherin") to serve as Alexander's pro bono counsel. See Dkts. 33, 40. Shortly after Sherin was appointed as counsel, Alexander received notice that the Gender Dysphoria Committee at the DOC had approved her request for an orchiectomy procedure, which involves surgical removal of an individual's testicles.

With the assistance of counsel, Alexander filed an Amended Complaint in August 2021 against the DOC Defendants and Wellpath, alleging violations of the Eighth Amendment, the Fourteenth Amendment, and the Americans with Disabilities Act ("ADA"). See Dkt. 47. Alexander alleged that Defendants had been deliberately indifferent to her serious medical needs and had refused to provide reasonable accommodations for her disabilities. She requested an injunction ordering the Defendants to transport her to medical appointments in a wheelchair van and provide her with access to specific gender-affirming clothing and cosmetics to alleviate symptoms of her gender dysphoria. See id. at 31.

In November 2021, the DOC Defendants filed a motion to dismiss. The Court dismissed Alexander's Fourteenth Amendment due process claim and partially dismissed her Eighth Amendment claim, finding no plausible claim of deliberate indifference with respect to the size of the transportation van and access to her preferred cosmetics. At the close of discovery, all parties cross-moved for summary judgment on the surviving claims. On August 29, 2023, the

3

Court issued a summary judgment ruling that put an end to the three-and-a-half-year litigation. See Dkt. 113. The Court ruled in favor of the DOC Defendants and Wellpath on the Eighth Amendment claim and the Fourteenth Amendment equal protection claim, thus dismissing those counts in their entirety. The Court also dismissed the ADA claim against the DOC Defendants with respect to Alexander's request for "gender-affirming items based on specific brands, colors, or cosmetics (i.e., Levi's 515 and 512 jeans, nude bra, and cosmetic items)." Id. at 30. However, the Court ruled in favor of Alexander on her ADA claim with respect to transportation and properly fitting clothing, specifically ordering the DOC Defendants to "transport Alexander to medical appointments in a wheelchair van when it is reasonably available" and "allow Alexander to purchase and possess properly fitting clothing." Id. at 29.

## LEGAL STANDARD

The ADA includes the following provision regarding attorney's fees and costs:

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205; see also Fed. R. Civ. P. 54(d)(2) (reciting the process for obtaining attorneys' fees). In the context of civil

rights cases, the Supreme Court has explained that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010).

In the First Circuit, courts employ the lodestar method for calculating reasonable attorney's fees, which entails "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 336 (1st Cir. 2008). Courts have flexibility to "fashion a lodestar which differs substantially from the fee requested by the prevailing party." Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997) (explaining that courts may "segregate time spent on certain unsuccessful claims, eliminate excessive or unproductive hours, and assign more realistic rates to time spent" (citations omitted)). Even after a lodestar is calculated, courts have discretion to adjust this amount upwards or downwards to arrive at an award that is reasonable. See Burke v. McDonald, 572 F.3d 51, 56 n.5 (1st Cir. 2009).

## ANALYSIS

The parties agree that Alexander is the prevailing party in this matter and thus entitled to reasonable attorney's fees and costs. The parties' only disagreement is how much Alexander should be awarded. In her Motion for Attorney's Fees and Bill of Costs (Dkt. 116), Alexander seeks reimbursement of $329,356.50 in

5

attorney's fees. In support of her request, she submitted a billing record with time record entries by attorneys and staff at Sherin. See Dkt. 118-1. The number of hours, hourly rates, and total amount billed by each attorney or staff member to this matter is summarized in the following table:

| Attorney/Staff | Total Billed Hours | Hourly Rate | Requested Amount |
|---|---|---|---|
| Sara J. Shanahan | 121.7 | $560 - $600 | $68,862.00 |
| Daniel S. Guenther | 447.8 | $345 - $385 | $162,017.00 |
| Paralegals | 66.7 | $285 - $320 | $20,514.00 |
| Law Students | 247.3 | $290 - $315 | $74,883.50 |
| Allowance of 8 hours to defend fees motion[1] | 8 | $385 | $3,080 |
| **TOTAL** | | | **$329,356.50** |

See Dkt. 117 at 10. In response, the DOC Defendants urge the Court to significantly reduce the requested attorney's fees, arguing that the appropriate amount should not exceed $130,396.20. The DOC Defendants challenge the attorney's fees sought by Alexander on multiple grounds, which the Court addresses in turn.

---

[1] In anticipation of having to defend her motion, Alexander requests $3,080 for "8 hours to defend fees motion if contested by the DOC." Dkt. 117 at 10. However, Alexander did not submit a reply brief and the Court did not hold a hearing on the motion. The request for the additional $3,080 in fees is therefore **DENIED**.

6

I.  **Attorneys**

   **A. Hourly Rates**

   Reasonable hourly rates for billing attorneys "is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015) (quoting Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co., 745 F.3d 1, 5 (1st Cir. 2014)). Rates must "be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." Blum v. Stenson, 465 U.S. 886, 895 (1984). Here, the Court "must find the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation" as Alexander's two attorneys. Martino v. Mass. Bay Transp. Auth., 230 F. Supp. 2d 195, 205 (D. Mass. 2002). As the fee applicant, Alexander "bears the burden of providing this Court with affidavits and other forms of evidence that: (1) establish [her] lawyers' skills and experience, and (2) inform the Court of the prevailing market rate in the community for attorneys with such qualifications." Id.

   Sara J. Shanahan, a law firm partner with twenty-nine years of experience, charged between $560 and $600 per hour for work billed to this matter, with the range reflecting annual increases to her rate. Daniel S. Guenther, an associate with five years of

7

experience, charged between $345 and $385 per hour. In support of these proposed rates, Alexander submitted an affidavit by Thomas F. Maffei, senior counsel at Sherin, who reviewed the billing records and stated that the hourly rates charged by Attorneys Shanahan and Guenther were reasonable based on fees customarily charged by other legal practitioners in Boston. See Dkt. 119 at 3. The DOC Defendants contend that the rates should be reduced to $210 per hour for Attorney Shanahan and $164 per hour for Attorney Guenther, based on equivalent rates for Criminal Justice Act ("CJA") cases.

Given their relative positions and levels of experience, the Court finds that Attorney Shanahan's and Attorney Guenther's hourly rates are reasonable and consistent with local rates. Other sessions in this court have recently adopted rates in the approximate range of the hourly rates sought by the attorneys here. See, e.g., Riley v. Mass. Dep't of State Police, No. 15-14137, 2019 WL 4973956, at *2 (D. Mass. Oct. 8, 2019) (finding that $600 per hour for a senior partner and $350 per hour for an associate were reasonable rates); Cox v. Mass. Dep't of Corr., No. 13-10379, 2019 WL 2075588, at *8 (D. Mass. May 10, 2019) (compensating plaintiff's lead attorney at $450 per hour in a prisoner civil rights case involving an ADA claim). In arguing for a reduction, the DOC Defendants cite to one case from eight years ago in which the Court reduced the attorneys' hourly rate to $300 per hour, in

8

part because the "case was straightforward." Marshall v. Rio Grande River Ltd. P'ship, 162 F. Supp. 3d 54, 59 (D. Mass. 2016). Here, however, the Court must factor in the complexity of Alexander's case, in addition to increases in attorney rates over the years. See Burke v. McDonald, No. 00-10376, 2007 WL 2826248, at *3 (D. Mass. Sept. 28, 2007), aff'd, 572 F.3d 51 (1st Cir. 2009) ("[I]t is appropriate to take into account the changes in billing rates over time."). The DOC Defendants do not cite to any cases in which pro bono counsel representing inmates in civil rights cases were awarded CJA rates. Because the DOC Defendants do not challenge the experience or qualifications of Alexander's attorneys, the Court concludes that their hourly rates are reasonable and applies them accordingly in the lodestar calculation.

### B. Number of Hours

Having established the lodestar rates, the Court next scrutinizes the billing record to determine the appropriate number of hours. Prior to submitting this motion, Alexander's attorneys voluntarily eliminated certain time entries from their billing record, resulting in a $19,753 reduction in fees. Although it is unclear what types of time entries were eliminated, before making further reductions the Court acknowledges that Alexander's attorneys already made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is

9

obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

### 1. Degree of Success

If a plaintiff achieves only partial or limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith." Id. at 436; see also Coutin, 124 F.3d at 339 ("If a plaintiff prevails on only some of multiple claims, then a fee reduction may be in order."). The degree of success, or "results obtained," is determined by considering the "plaintiff's success claim by claim, the relief actually achieved and the societal importance of the right which has been vindicated." Parker v. Swansea, 310 F. Supp. 2d 376, 398 (D. Mass. 2004) (cleaned up).

Alexander contends she successfully defended against the DOC Defendants' motion to dismiss and prevailed under her ADA claim at summary judgment. Moreover, Alexander argues that her claims under the Eighth Amendment, Equal Protection Clause, and the ADA are "inextricably linked to her core claim of mistreatment by the DOC" and that the work performed by her attorneys "cannot be separated into discrete efforts on her different legal theories." Dkt. 117 at 5. Finally, Alexander emphasizes the "strong societal importance" of setting precedent with her suit given her vulnerable

10

position as a disabled inmate with gender dysphoria and claustrophobia. Id. at 6.

Although Alexander's constitutional claims under the Eighth Amendment and Fourteenth Amendment were ultimately unsuccessful, the Court agrees with Alexander that they were related to her successful ADA claim. Because Alexander's claims arose from "a common core of facts" and were "based on related legal theories," her suit "cannot be viewed as a series of discrete claims." Hensley, 461 U.S. at 435; see Cox, 2019 WL 2075588, at *3 (declining to reduce hours spent on failed claims because "the unsuccessful Section 1983 claim was inextricably tied to the successful ADA claim"). Instead, the Court must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 435. Here, the primary relief sought by Alexander was an orchiectomy procedure, which the DOC Defendants voluntarily approved shortly after Sherin was appointed pro bono counsel and before any substantive motion practice had occurred. At summary judgment, although Alexander prevailed in obtaining transportation to medical appointments in a wheelchair van and properly fitting clothing, she did not prevail in obtaining gender-affirming items based on specific brands, colors, or cosmetics. All claims against Wellpath were also dismissed at summary judgment.

11

Unfortunately, the billing records submitted by Alexander's attorneys provide no basis for determining how many hours were devoted to achieving specific requests or litigating against certain Defendants. Although a handful of time entries reference specific issues, see, e.g., Dkt. 118-1 at 10 (listing "Research cases on transportation accommodations" and "Phone conference with SJS, Caffrey re: transportation and cosmetic items"), most of the time entries are written generically, see, e.g., id. at 23 ("Case law research for SJ motion"). Because it would be impossible for the Court to discount how much work Alexander's attorneys spent pursuing unsuccessful requests or claims, the Court will apply a 40% reduction to the number of hours expended. Hensley, 461 U.S. at 436-37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."); see Doe v. Mass. Dep't of Corr., 2019 WL 2913969, at *2 (D. Mass. July 8, 2019) (awarding plaintiff one-third of the total attorney's fee "because she successfully obtained relief on three out of her nine requests"); Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 121-22 (1st Cir. 2004) (affirming district court's reduction of the total attorney's fees by thirty-three percent since "plaintiffs obtained limited claims-based success and relief").

**2. Excessive and Duplicative Work**

Courts may also exclude hours spent on tasks that are "duplicative, unproductive, excessive, or otherwise unnecessary." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984); see also Gay Officers Action League v. P.R., 247 F.3d 288, 295-96 (1st Cir. 2001) ("In fashioning fee awards, the attorneys' contemporaneous billing records constitute the usual starting point, but the court's discretion is by no means shackled by those records. For example, it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like.").

Altogether, Alexander's attorneys collectively billed 569.5 hours to this matter. As the DOC Defendants point out, Attorney Guenther billed 89.5 hours and Attorney Shanahan billed 66.5 hours before the Amended Complaint was even filed. While many tasks must be completed prior to filing a complaint -- such as communicating with Alexander, researching claim elements, and drafting the complaint -- the Court finds that a combined total of 156 hours spent on work prior to the filing of the Amended Complaint is an excessive amount of hours incurred.

Several of the time entries are also duplicative. For example, both Attorneys Shanahan and Guenther attended many calls with their client Alexander together, in addition to several calls with opposing counsel. Both attorneys were also present at motion

hearings. "The time for two or three lawyers in a courtroom or conference, when one would do, 'may obviously be discounted.'" Hart v. Bourque, 798 F.2d 519, 523 (1st Cir. 1986) (quoting King v. Greenblatt, 560 F.2d 1024, 1027 (1st Cir. 1977)).

However, given the significant 40% reduction in hours already applied above, the Court finds that no further reduction is necessary to account for excessive or duplicative work.

### 3. Non-core Work

Courts have the discretion to apply differential rates to fees for "core" work, such as "legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders," and "non-core" work, which includes "letter writing and telephone conversations." Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015) (quoting Brewster v. Dukakis, 3 F.3d 488, 492 n.4 (1st Cir. 1993)). "Non-core work is usually compensated at two-thirds the billing rate approved for core legal work." Parker, 310 F. Supp. 2d at 391.

The DOC Defendants contend that the Court should use reduced rates for the time that Alexander's attorneys spent on non-core tasks. They claim that several non-core entries exist in the billing record, including "multiple entries for internal meetings and discussions among several individuals, meetings and correspondence with plaintiff, and travel to and from client meetings." Dkt. 127 at 16. However, neither party has specifically

14

identified or tallied these non-core entries, and courts are not required to distinguish between core vs. non-core work. See Matalon, 806 F.3d at 639 ("[W]e have never imposed a rigid requirement that a district court employ a core/non-core analysis when adjudicating a fee petition."). Therefore, the Court concludes that no further discount is needed.

### 4. Overall Reduction of Hours

In summary, the Court applies a 40% reduction to the number of hours billed by Alexander's attorneys. See Fox v. Vice, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). Using their customary billing rates, the final attorney's fees awarded for work performed by Attorney Shanahan is therefore $41,317.20 (reduced from the requested amount of $68,862.00), and the attorney's fees awarded for work performed by Attorney Guenther is $97,210.20 (reduced from the requested amount of $162,017.00).

## II. Paralegal and Law Students

### A. Hourly Rates

The DOC Defendants request the Court reduce the hourly rates for paralegals and law students to $100 per hour. In support of her request for higher rates, Alexander submitted an affidavit from Sherin counsel stating that "the hourly rates of between $285

15

and $320 for paralegals and $290-$315 for student law clerk time is reasonable." Dkt. 119 at 3. However, based on recent caselaw, the Court agrees with the DOC Defendants that the hourly rate of $100 per hour is more reflective of prevailing market rates. See Cosenza v. City of Worcester, Mass., No. 18-10936, 2023 WL 2838381, at *2 (D. Mass. Apr. 7, 2023) (finding hourly rates of $100 to $150 per hour appropriate for paralegals); Cano v. Saul, 505 F. Supp. 3d 20, 30-31 (D. Mass. 2020) (applying rate of $95 per hour for paralegals and $75 per hour for law students). Accordingly, the Court reduces the hourly rates for paralegals and law students to $100 per hour.

**B. Number of Hours**

Turning to the number of hours billed by non-attorney staff, the Court finds that the 66.7 hours billed by paralegals is reasonable. However, the Court finds that the combined 247.3 hours billed for attorney-supervised law student work is excessive. Most of the time entries billed by the six law students went towards caselaw research and background reading. "While engaging in experiential learning is an important facet of legal education, the First Circuit has held that '[f]ee awards are not intended to serve as full employment or continuing education programs for lawyers and paralegals.'" Cano, 505 F. Supp. 3d at 27 (quoting Castañeda-Castillo v. Holder, 723 F.3d 48, 80 (1st Cir. 2013)) (cleaned up). Moreover, several of the time entries from law

16

students suffer from block billing, which is a "time-keeping method by which [a timekeeper] lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." E.E.O.C. v. AutoZone, Inc., 934 F. Supp. 2d 342, 354 (D. Mass. 2013); see also Torres-Rivera, 524 F.3d at 340 ("Where [a] party furnishes time records that are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues. In such a circumstance, the court may adjust those entries to achieve an equitable result." (internal citations omitted)). For the reasons explained above, the Court will apply the same 40% reduction to the total number of hours expended by law students.

### III. Summary of Award

In summary, the Court applies a 40% reduction to the total number of hours billed by the two attorneys and six law students -- but leaves the number of hours billed by the paralegals untouched. The Court also reduces the hourly rates of the paralegals and law students to $100 per hour -- but maintains the customary billing rates of the two attorneys. A summary of the Court's fee reductions and the final court-approved amount of attorney's fees is set forth in the table below:

| Attorney/Staff | Requested Amount | Summary of Reduction | Court-Approved Amount |
|---|---|---|---|
| Sara J. Shanahan | $68,862.00 | Reduce hours by 40% | $41,317.20 |
| Daniel S. Guenther | $162,017.00 | Reduce hours by 40% | $97,210.20 |
| Paralegals | $20,514.00 | Reduce hourly rate to $100 | $6,670.00 |
| Law Students | $74,883.50 | Reduce hours by 40% and reduce hourly rate to $100 | $14,838.00 |
| **TOTAL** | $326,276.50 | | **$160,035.40** |

The Court finds that an award of $160,035.40 in attorney's fees is reasonable in light of the scope of Alexander's claims and the final relief obtained.[2] The Court is grateful to Attorneys Shanahan and Guenther, and the law firm Sherin and Lodgen, for agreeing to represent Alexander pro bono. At the same time, the

---

[2] Alexander cites to two similar cases in this district that have awarded higher attorney's fees. See Cox v. Mass. Dep't of Corrs., No. 13-10379, 2019 WL 2075588 (D. Mass. May 10, 2019) (awarding $405,077.50 in fees in partially prevailing prisoner ADA suit); Soneeya v. Spencer, No. 07-12325, Dkt. 161 (D. Mass. May 21, 2013) (awarding $483,676.87 in fees in partially prevailing gender dysphoria Eighth Amendment medical treatment case). However, as the DOC Defendants point out, both cases spanned several years of litigation, involving significant motion practice and eventually trial.

Court is "mindful that the defendants are a public entity and public officials, performing an essential job at a time of strained resources," and for that reason has reviewed the billing record carefully and arrived at an award it deems reasonable and appropriate. LaPlante v. Pepe, 307 F. Supp. 2d 219, 223 (D. Mass. 2004).

As for costs, the DOC Defendants do not separately dispute the costs sought by Alexander. The Court finds that the $8,900.89 spent by Sherin in deposition expenses, litigation and discovery support services, and summons and subpoenas, in addition to the $400 in filing fees spent by Alexander, were necessary and reasonable expenses of litigation supported by the record. See Dkt. 118-2.

## ORDER

The Court **ORDERS** the DOC Defendants pay the following assessment of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205:

(1) attorney's fees of $160,035.40;

(2) costs of $8,900.89 paid to Sherin and Lodgen LLP;

(3) costs of $400.00 paid to Ms. Christine Mara Alexander to be credited directly to her inmate account.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge